UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RINA MANOS, *as parent and legal guardian of Y.M.,* and RINA MANOS, *individually,*

               Plaintiffs,

-v.-

NEW YORK CITY DEPARTMENT OF EDUCATION,

               Defendant.

---

25 Civ. 1101 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Rina Manos, as parent and legal guardian of Y.M. and as an individual ("Plaintiffs"), brought this action under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1485, against the New York City Department of Education ("DOE" or "Defendant") to set aside an order of a State Review Officer ("SRO") upholding the dismissal of Plaintiffs' due process complaint by an Impartial Hearing Officer ("IHO"). Before the Court is DOE's motion to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court grants the motion to dismiss.

**BACKGROUND**[1]

## A.      Factual Background

### 1.      Statutory Overview

Under the IDEA, "[s]tates receiving federal funding [must] make a 'free appropriate public education' (FAPE) available to all children with disabilities residing in the [s]tate." *Forest Grove Sch. Distr.* v. *T.A.*, 557 U.S. 230, 232 (2009) (citing 20 U.S.C. § 1412(a)(1)(A)). "A FAPE consists of 'special education and related services tailored to meet the unique needs of a particular child[ ]' ... and provided in conformity with an [I]ndividualized [E]ducation [P]rogram, or IEP[.]" *Reyes ex rel. R.P.* v. *N.Y.C. Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014) (first quoting *Walczak* v. *Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998); then citing 20 U.S.C. § 1401(9)(D)). Moreover, the IDEA requires "[a]ny [s]tate educational agency ... that receives [federal] assistance ... [to] establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." 20 U.S.C. § 1415. "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in

---

[1] This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also considers the exhibits attached to the Complaint ("Compl., Ex. [ ]") and the declaration of Nicholas R. Tambone in support of DOE's motion to dismiss ("Tambone Decl." (Dkt. #18)). *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference in or integral to a complaint).

For ease of reference, the Court refers to DOE's memorandum of law in support of its motion to dismiss as "DOE Br." (Dkt. #17), to Plaintiffs' memorandum of law in opposition to DOE's motion as "Pl. Opp." (Dkt. #19), and to DOE's memorandum of law in reply as "DOE Reply" (Dkt. #20).

compliance with the IDEA's procedural and substantive requirements." *N.B.* v. *N.Y.C. Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017) (summary order).

New York, which receives federal funding under the IDEA, has established a "two-tier system of administrative review" to comply with the statute's procedural requirements. *Murphy* v. *Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002); *see* N.Y. Educ. Law § 4404. "The first tier entitles parents dissatisfied with a proposed IEP to have it reviewed before an [I]mpartial [H]earing [O]fficer … appointed by the board of education." *Mackey ex rel. Thomas M.* v. *Bd. of Educ. for Arlington Cent. Sch. Dis.*, 386 F.3d 158, 160 (2d Cir. 2004) (citing N.Y. Educ. Law § 4404(1)). Then, at the second tier, "parties aggrieved by the outcome of the [first-tier] due process hearing may pursue an appeal before a [S]tate [R]eview [O]fficer[.]" *Murphy*, 297 F.3d at 197 (citing N.Y. Educ. Law § 4404(2)). "Any party still aggrieved [after the state administrative review process] may sue in state or federal court." *Mackey*, 386 F.3d at 160 (citing 20 U.S.C. § 1415(i)(2)).

"The IDEA contains a separate framework [from the FAPE framework] for disabled children who are parentally-placed in private schools[.]" *E.T.* v. *Bd. of Educ. of Pine Bush Cent. Sch. Dist.*, No. 11 Civ. 5510 (ER), 2012 WL 5936537, at *10 (S.D.N.Y. Nov. 26, 2012). This framework "requires states to 'allocate [only] a proportional share of federal IDEA funds to provide special education and related services to parentally-placed private school children.'" *Id.* (quoting *J.S.* v. *Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 665 (S.D.N.Y. 2011)). While the IDEA still requires tailored services plans for parentally-

placed students in private schools, these students typically receive more limited services than those who remain enrolled in public schools. *Id.* at \*11. In addition, "[f]ederal regulations promulgated under the IDEA provide that the due process procedures relating to IEPs do not apply to these [private school] services plans." *Law Off. of Philippe J. Gerschel* v. *N.Y.C. Dep't of Educ.*, No. 24 Civ. 6303 (MMG) (SDA), 2025 WL 466973, at \*2 (S.D.N.Y. Feb. 1, 2025) (citing 34 C.F.R. § 300.140(a)(1)), *report and recommendation adopted*, 2025 WL 2778165 (S.D.N.Y. Sept. 30, 2025).

As it happens, New York law goes further than the IDEA in its treatment of parentally-placed students in private schools. In New York, where the services plan for a private school student is known as an Individualized Education Service Program ("IESP"), state law calls for the development of IESPs "in the same manner and with the same contents" as that of IEPs for public school students. *Gerschel*, 2025 WL 466973, at \*2 (internal quotation marks omitted) (quoting N.Y. Educ. Law § 3602-c(2)(b)(1)). "New York law also provides that the two-tier system of administrative review set forth in Section 4404 of the Education Law applies to IESPs." *Id.* (citing N.Y. Educ. Law § 3602-c(2)(b)(1)). In other words, parents dissatisfied with proposed IESPs for their children in private schools can also file due process complaints and utilize New York's two-tier administrative review process.

### 2. Plaintiffs' Due Process Complaint

Plaintiff Y.M. is a minor child with disabilities, and Plaintiff Rina Manos is Y.M.'s parent and natural guardian. (Compl. ¶¶ 3, 6). Both are residents of

Far Rockaway, New York. (*Id.* ¶ 7). Because Y.M. is classified as a disabled student, Y.M. is eligible to receive special education services under the IDEA. (*Id.* ¶¶ 3-4). Instead of enrolling Y.M. in a public school and taking advantage of the FAPE framework, however, Ms. Manos decided to parentally place Y.M. in a private school. (*See id.* ¶ 32; *id.*, Ex. B at 3).

On February 29, 2024, Ms. Manos filed a due process complaint through New York's two-tier administrative review system, challenging Defendant DOE's implementation of Y.M.'s IESP during the 2023-2024 school year. (Compl. ¶ 32; *see generally id.*, Ex. A). Specifically, Ms. Manos sought "pendency relief and a final order to award services and direct funding" for that school year. (Compl. ¶ 32). Upon receiving permission from the assigned IHO, Ms. Manos amended her complaint twice. (*Id.*, Ex. A at 1). Then, at a prehearing conference held on June 3, 2024, she agreed to participate in a due process hearing, which was scheduled for July 10, 2024. (Compl. ¶ 33; *id.*, Ex. A at 1). On the scheduled date, however, "Plaintiff due to unforeseen circumstances was delayed to join the hearing." (Compl. ¶ 33). In fact, according to the IHO, "there was no appearance" at all by Ms. Manos or her counsel at the due process hearing, and there was "no prior communication" indicating that they were unavailable or seeking an adjournment. (*Id.*, Ex. A at 1). The IHO added that Ms. Manos and her counsel "ha[d] actual notice of the July 10, 2024 [d]ue [p]rocess [h]earing from agreeing at the [p]rehearing [c]onference, receiving the [p]rehearing [c]onference [s]ummary and [o]rder, dated June 3, 2024, serving disclosure documents, and communicating about the [d]ue [p]rocess [h]earing."

5

(*Id.* at 2).

At the due process hearing, DOE made an application to dismiss the complaint based on Ms. Manos's failure to prosecute. (Compl. ¶ 33; *id.*, Ex. A at 2). The IHO granted the application and dismissed the complaint with prejudice after finding that the "[p]arent's [r]epresentative's failure to appear and pursue this matter was willful and intentional, [thereby] warranting the termination with prejudice." (Compl., Ex. A at 2; *see* Compl. ¶ 34). Ms. Manos appealed the IHO's termination order to an SRO, arguing in part that (i) the IHO had failed to provide a notice to show cause why the due process complaint should not be dismissed with prejudice and (ii) the IHO had no basis to find counsel's non-appearance to be willful and intentional. (Compl. ¶¶ 36-39).

On October 9, 2024, the SRO dismissed the appeal and determined that the IHO had not abused his discretion in dismissing Ms. Manos's complaint with prejudice. (Compl., Ex. B at 8). The SRO first found that the IHO had provided adequate notice of a potential dismissal with prejudice, including at least two separate warnings — one in an omnibus interim order issued at the beginning of the case, and another in the prehearing conference and summary order — about the consequences of failing to appear, which included dismissal of the complaint. (*Id.* at 6). While the warnings did not specifically indicate that the dismissal would be with prejudice, the SRO reasoned that the language was sufficiently broad and did not specify that "a dismissal without prejudice would be issued." (*Id.*). The SRO also observed that "[t]his [wa]s not

the first time that [Plaintiffs'] attorney ha[d] failed to appear and later blamed it on calendar difficulties." (*Id.* at 7).  Based on those determinations, the SRO concluded that the IHO's termination of the case "was not an impermissible denial of due process." (*Id.* at 7-8).

## B.    Procedural Background

On February 7, 2025, Plaintiffs filed their Complaint in this Court.  (Dkt. #1).  The Complaint contains three causes of action: (i) violation of Plaintiffs' due process rights under the Fourteenth Amendment; (ii) violation of Plaintiffs' right to an impartial hearing and a decision on substantive grounds under 20 U.S.C. § 1415 and 8 N.Y.C.R.R. § 200.5(j); and (iii) failure to provide a FAPE and denial of Plaintiffs' automatic pendency rights, in violation of 8 N.Y.C.R.R. § 200.5 and N.Y. Educ. Law § 4404.  Plaintiffs sought to set aside the SRO's decision, remand the due process complaint to an IHO, and establish their automatic pendency entitlement; they also requested attorney's fees and costs. (Compl. at 11).  In the alternative, Plaintiffs requested that the Court allow them to refile their claims for relief at the IHO level and toll any applicable statutes of limitations.  (*Id.*).

Instead of answering the Complaint, DOE filed a request for a pre-motion conference in anticipation of moving to dismiss the Complaint.  (Dkt. #10).  The Court granted that request and held the pre-motion conference on May 9, 2025, at which conference it directed the parties to submit a proposed schedule on the motion to dismiss.  (Dkt. #12; May 9, 2025 Minute Entry).  According to the parties' proposed schedule (Dkt. #14), which the Court

endorsed (Dkt. #15), DOE filed its motion to dismiss and supporting papers on June 16, 2025 (Dkt. #16-18).  Plaintiffs filed their opposition on July 21, 2025. (Dkt. #19).  DOE filed its reply on August 11, 2025.  (Dkt. #20).

## DISCUSSION

### A.    Applicable Law

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based."  *O'Shea* v. *P.C. Richard & Son, LLC*, No. 15 Civ. 9069 (KPF), 2017 WL 3327602, at *4 (S.D.N.Y. Aug. 3, 2017).  In resolving a facial motion, which is based solely on the complaint and its attachments, the district court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff asserting jurisdiction."  *Id.*  In contrast, the court may consider evidence outside the pleadings when it is presented with a factual challenge.  *Id.*  To oppose a fact-based motion, the plaintiff "must come forward with evidence of [her] own to controvert that presented by the defendant." *Equal Vote Am. Corp.* v. *Pelosi*, No. 19 Civ. 777 (KPF), 2020 WL 1467319, at *3 (S.D.N.Y. Mar. 26, 2020) (internal quotation marks omitted) (quoting *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)).

On a Rule 12(b)(6) motion, the court "draw[s] all reasonable inferences in [the plaintiff's] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Indeed, the plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action" — that is, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, "[w]hen a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the [c]ourt must consider the Rule 12(b)(1) motion first." *Bellocchio* v. *Garland*, 614 F. Supp. 3d 11, 17 (S.D.N.Y. 2022) (internal quotation marks omitted) (quoting *Reliability Inc.* v. *Doki*, No. 20 Civ. 7109 (KPF), 2021 WL 3408589, at *6 (S.D.N.Y. Aug. 4, 2021)).

**B.    The Court Grants DOE's Motion to Dismiss**

**1.    Plaintiffs' Claims Do Not Arise Under the IDEA Statute**

Under 28 U.S.C. § 1331, federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Supreme Court has instructed that a case "arises under" federal law where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc.* v. *McVeigh*, 547 U.S. 677, 689-90 (2006) (internal quotation marks omitted) (quoting *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983)).  At the same time, the Court "has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction because of the overwhelming predominance of state-law issues." *Merrell Dow Pharms. Inc.* v. *Thompson*, 478 U.S. 804, 814 n.12 (1986).  Indeed, the Court has articulated a four-factor test and determined that "federal jurisdiction over a state law claim will lie if a federal issue is: [i] necessarily raised, [ii] actually disputed, [iii] substantial, and [iv] capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

Here, Plaintiffs contend that this Court has federal question jurisdiction because they brought federal claims under the IDEA, a federal statute, and

10

that the Court retains supplemental jurisdiction over their remaining state-law claims.  (Compl. ¶¶ 12-13, 15; Pl. Opp. 6-11).  Specifically, Plaintiffs purport to "challenge[ ] the denial of procedural rights that are guaranteed under the IDEA, 20 U.S.C. § 1415."  (Pl. Opp. 6).  According to Plaintiffs, Section 1415 not only provides procedural safeguards, but it also establishes a private right of action for parties (like Plaintiffs) who are aggrieved by the administrative process to bring a civil action in federal court.  (*Id.* at 6-7 (citing 20 U.S.C. § 1415(a), (i)(2)(A))).  Plaintiffs acknowledge that "New York has elected to go further [than the IDEA] by providing due process hearings regarding IESPs," but reasoning that the same IDEA-mandated administrative process applies to both public and private school students in New York, Plaintiffs posit that "the question before the Court is whether the IDEA allows a dismissal with prejudice that is not based on the merits."  (*Id.* at 7-8).  This question, Plaintiffs add, "is an IDEA question and [a constitutional] due process question, and thus, one that is a federal law question."  (*Id.* at 8).  Furthermore, Plaintiffs believe that their IDEA claims meet all four factors in the Supreme Court's *Grable-Gunn* test.  (*Id.* at 9-11).

DOE disputes Plaintiffs' characterization of the federal question in this case, arguing instead that the Court "lacks subject-matter jurisdiction because IESP due process cases are not 'brought under' 20 U.S.C. § 1415."  (DOE Br. 13).  Section 1415, DOE contends, "is clear that the due process 'procedural safeguards' … [are] only provide[d] '… with respect to the provision of a [FAPE].'"  (DOE Reply 2-3 (quoting 20 U.S.C. § 1415(a))).  Moreover, the

IDEA's implementing regulations have "deliberately excluded parentally placed private-school students from federal due process requirements." (*Id.* at 3 (citing 34 C.F.R. § 300.140(a)(1) (stating that "[d]ue process [is] not applicable" to complaints pertaining to parentally-placed private school students))).  Thus, DOE argues that Plaintiffs' concession that New York law, and not the IDEA, extends due process hearings to private school students with IESPs is fatal to their assertion of subject matter jurisdiction in this case.  (*Id.* at 1-3).

To the extent that Plaintiffs' argument about the Court's federal question jurisdiction is based solely on the IDEA statute, the Court agrees with DOE that it lacks subject matter jurisdiction.[2]  Second Circuit case law and persuasive authority from sister courts in this District convince the Court that federal question jurisdiction is not triggered when the due process rights asserted by Plaintiffs are provided by New York law, even though New York chose to adopt identical procedures afforded by federal law.

Indeed, the Second Circuit has described the IDEA "as a model of cooperative federalism" under which "states may exceed the federal floor and enact their own laws and regulations to guarantee a higher level of entitlement to disabled students." *Bay Shore Union Free Sch. Dist.* v. *Kain*, 485 F.3d 730,

---

[2]    In their Complaint, Plaintiffs also raised a Fourteenth Amendment due process claim, which they reference briefly in their opposition.  (Compl. ¶¶ 44-50; *see* Pl. Opp. 7-8). DOE argues that Plaintiffs did not allege that this case arises under the Fourteenth Amendment for purposes of subject matter jurisdiction, especially because the Complaint did not specifically cite 42 U.S.C. § 1983 as providing a federal cause of action for Plaintiffs' constitutional claim.  (DOE Br. 16 n.4).  The Court tends to agree with DOE, but out of an abundance of caution, it addresses Plaintiffs' constitutional claim in the next section under Rule 12(b)(6).

733 (2d Cir. 2007) (internal quotation marks omitted).  In *Bay Shore*, where the primary dispute was over whether New York law created a legal obligation for a school district to provide a one-to-one aide to a disabled student at a parochial school, the parties "concede[d] that [the] IDEA d[id] not require the [s]chool [d]istrict to provide [the student] with" such an aide.  *Id.* at 731, 733-34.  The Second Circuit therefore determined that, "assuming that [the] IDEA incorporate[d] the relevant New York Education Law, this does not provide an independent federal question that would sustain the [district] court's jurisdiction."  *Id.* at 734.  That is because resolution of the legal dispute did not "turn on the interpretation of federal law," but instead rested "entirely on a state-law issue."  *Id.*  The Second Circuit further held that "a federal court may not exercise jurisdiction over a civil action brought under [20 U.S.C.] § 1415(i)(2)(A) if the claims asserted turn exclusively on matters of state law and diversity of citizenship is absent."  *Id.* at 736.  Neither the IDEA's authorization of a cause of action for "any party aggrieved by the findings and decision" made by a state educational agency nor its jurisdictional provision in Section 1415(i)(2)(A) should be construed as providing a blank check for federal question jurisdiction, especially if an issue that turns solely on state law is being challenged in federal court.  *Id.* at 734-36 (quoting 20 U.S.C. § 1415(i)(2)(A)).

More recently, a sister court in this District applied *Bay Shore* to determine that there was no federal question presented in a case where a plaintiff law firm sought to recover attorney's fees and costs from DOE for its

successful litigation of 50 administrative proceedings on behalf of students with IESPs. *Gerschel*, 2025 WL 466973, at *1, 3, 6. There, the plaintiff acknowledged that "the right of parentally-placed private school students to a due process hearing stems from" New York law, but it made a remarkably similar argument to the one advanced here that a violation of New York law also violated the IDEA because the IDEA required states to provide procedural safeguards to disabled students entitled to a FAPE. *Id.* at *4. In moving to dismiss the plaintiff's case, DOE likewise argued in *Gerschel* that the district court lacked subject matter jurisdiction because IESP cases did not arise under Section 1415. *Id.*

The *Gerschel* court determined that it lacked subject matter jurisdiction because "[t]he authority relied upon by [the] [p]laintiff underscore[d] that students' rights to the services and procedural safeguards at issue [t]here are a creature of state law." 2025 WL 466973, at *5. It is New York law — not the IDEA — that ensures that "students with IESPs are entitled to equivalent rights as students with IEPs." *Id.* Specifically, "[t]he fact that New York law incorporates the standards set forth in 20 U.S.C. § 1415 does not change the fact that the procedural safeguards are guaranteed to parentally-placed private school students only through state law." *Id.* at *6.

Based on the reasoning in *Bay Shore* and *Gerschel*, this Court similarly determines that Plaintiffs' claims do not present a federal question and therefore cannot establish this Court's subject matter jurisdiction. Indeed, Plaintiffs were able to file a complaint through the two-tier administrative

14

review process because New York law has gone above the floor set by the IDEA and extended that specific mechanism to private school students with IESPs. If that provision of New York law did not exist, then Plaintiffs would not have been able to rely on the IDEA for the same procedural safeguards.  As a result, Plaintiffs' due process challenge to the decisions of the IHO and the SRO in the state administrative review process turns on an issue of pure state law without involving federal law.  The model of cooperative federalism set up by the IDEA statute may allow for states like New York to strengthen the substantive and procedural rights afforded to disabled students, but it cannot be relied upon to extend jurisdiction where federal law does not reach.  For this reason, Plaintiffs cannot meet the Supreme Court's *Grable-Gunn* test, and this Court must dismiss their case for lack of subject matter jurisdiction.

2.     **To the Extent That the Court Has Subject Matter Jurisdiction, Plaintiffs Have Failed to State a Claim**

Although Plaintiffs have not explicitly made this argument in their briefing, their Fourteenth Amendment claim could be construed to independently give rise to subject matter jurisdiction.  *See* 28 U.S.C. § 1331 (establishing the district court's original jurisdiction over "civil actions arising under the Constitution … of the United States").[3]  In the interest of completeness, the Court has construed it as such.  Even so, the Court finds

---

3       Again, the Court is skeptical that Plaintiffs brought any independent constitutional claims because they did not assert in their Complaint such violations under 42 U.S.C. § 1983, which provides the necessary cause of action for any "violation of constitutional rights by state actors."  *Assoko* v. *City of New York*, 539 F. Supp. 2d 728, 734 (S.D.N.Y. 2008).

15

that Plaintiffs have failed to state any plausible procedural or substantive due process claim under the Constitution.

*First*, procedural due process "require[s] the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Luessenhop* v. *Clinton County*, 466 F.3d 259, 269 (2d Cir. 2006) (quoting *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  In particular, the Supreme Court has instructed that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted) (quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972)); *see id.* (explaining that a procedural due process claim requires consideration and balancing of three factors, including the private interest, the risk of erroneous deprivation of that interest, and the government's interest).  Here, Plaintiffs have not identified the various factors or alleged that the balancing of those factors tips in their favor.  In any event, the Court notes that the IHO provided adequate notice of dismissal as a possible consequence of missing the due process hearing, and Plaintiffs did in fact miss that hearing.

*Second*, "[t]o allege a violation of substantive due process, [a] plaintiff must claim: [i] a valid property interest or fundamental right; and [ii] that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority."  *Dukes* v. *N.Y.C. Emps.' Ret. Sys.*, 361 F. Supp. 3d 358, 375 (S.D.N.Y. 2019) (internal quotation marks

16

omitted) (quoting *King* v. *N.Y.C. Emps.' Ret. Sys.*, 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016)).  In this case, Plaintiffs have not asserted a valid property interest or fundamental right, nor have they alleged that the dismissal of their due process complaint with prejudice constituted conscience-shocking or grossly abusive conduct.  Therefore, the Court determines that Plaintiffs have failed to articulate a viable constitutional due process claim in their Complaint.

Finally, because the Court has decided to dismiss Plaintiffs' federal claims, it also exercises its discretion to decline supplemental jurisdiction over Plaintiffs' remaining state-law claims.  *See Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122-24 (2d Cir. 2006); *Harris* v. *Vasallo*, No. 23 Civ. 4440 (LTS), 2023 WL 4423558, at *4 (S.D.N.Y. July 10, 2023) ("A district court may decline to exercise supplemental jurisdiction over state-law claims … when it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

## CONCLUSION

For the foregoing reasons, DOE's motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:  March 3, 2026
        New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge